**Exhibit A (Page 1 of 18)**

ELECTRONICALLY FILED
7/13/2017 1:15 PM
2017-L-001140
CALENDAR: H
PAGE 1 of 18
CIRCUIT COURT OF
COOK COUNTY, ILLINOIS
LAW DIVISION
CLERK DOROTHY BROWN

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT- LAW DIVISION

JUANITA ARRINGTON, as
Independent Administrator of the
Estate of RONALD ARRINGTON,
deceased,

Plaintiffs,

v.                                                         No. 17 L 001140

CITY OF CHICAGO, Illinois, a municipal
corporation and Chicago Police Officer
DEAN W. EWING, Star #8653, individually,
and as agent of the City of Chicago,

Defendants.

## NOTICE OF FILING

TO:   Smith Spencer
      Assistant Corporation Counsel, City of Chicago
      30 N. La Salle St., Ste. 800
      Chicago IL 60602

    **PLEASE TAKE NOTICE** that on July 13, 2017, there was filed with the Clerk of the Circuit Court of Cook County, Law Division, Richard J. Daley Center, Chicago, Illinois, the attached **FIRST AMENDED COMPLAINT AT LAW**.

James D. Montgomery, Jr.

### CERTIFICATE OF SERVICE

    The undersigned, being first duly sworn on oath, deposes and says the attached Notice was served on the parties, as above or attached addressed, by enclosing a copy of same in envelopes, sealed, postage prepaid, and depositing same in the United States Mail Chute at 221 N. LaSalle Street, Chicago, Illinois, on the 9th day of July, 2017.

[X]   Under penalties as provided by Law
      pursuant to IL.REV.STAT. Ch. 110 Sec.
      1-109 certify that the statements set
      forth herein are true and correct.

James D. Montgomery, Jr.

Montgomery Law Firm, LLC.
221 North LaSalle Street, Suite 1414
Chicago, Illinois 60601
Firm I.D. 59474
(312) 880-1001

**Exhibit A (Page 2 of 18)**

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT- LAW DIVISION

JUANITA ARRINGTON, as
Independent Administrator of the
Estate of RONALD ARRINGTON,
deceased,

           Plaintiffs,

    v.

CITY OF CHICAGO, Illinois, a municipal
corporation and Chicago Police Officer
DEAN W. EWING, Star #8653, individually,
and as agent of the City of Chicago,

           Defendants.

No. 17 L 001140

JURY TRIAL DEMANDED

ELECTRONICALLY FILED
7/13/2017 1:15 PM
2017-L-001140
PAGE 2 of 18

## FIRST AMENDED COMPLAINT AT LAW

By her attorneys of record, the plaintiff, JUANITA ARRINGTON, as Independent

Administrator of the Estate of RONALD ARRINGTON, deceased, complains of the

defendants, CITY OF CHICAGO, Illinois, a municipal corporation, Chicago Police

Officer DEAN W. EWING, Star #8653, individually, and as agent of the City of Chicago,

("Defendants"), as follows:

### GENERAL ALLEGATIONS

    1.    At all times relevant hereto the plaintiff, JUANITA ARRINGTON, resides and has

resided in Cook County, Illinois.

    2.    At all times relevant hereto the defendant, CITY OF CHICAGO ("City"), is

located in Cook County, Illinois, and is an Illinois municipal corporation that maintains as one of

**Exhibit A (Page 3 of 18)**

its divisions/departments, a police department commonly known as the Chicago Police Department ("CPD").

3.      At all times relevant hereto the City employed the defendant, Chicago Police Officer Dean W. Ewing ("Ewing"), star #8653, as a sworn police officer.

4.      On July 1, 2016, Ewing was on duty, acting under color of law, and in the course of his employment with the City, while operating a CPD unmarked 2015 Ford Explorer.

5.      On July 1, 2016, at or around 11:00 a.m., plaintiff's decedent, Ronald Arrington, Isiah Stevenson and Michael Cokes were passengers in the vehicle driven by another person, which person was suspected to have been involved in the alleged robbery in Tinley Park, Illinois.

6.      On July 1, 2016 at or around 11:00 a.m. and while the vehicle in which Ronald Arrington, Isiah Stevenson and Michael Cokes were riding was on Interstate 57, a pursuit was initiated by the Illinois State Police ("ISP") and Trooper Walker that proceeded into the City.

7.      On July 1, 2016, said pursuit proceeded into the vicinity of 124th and Union, in the City, with the ISP and Trooper Walker following behind the vehicle in which Ronald Arrington, Isiah Stevenson and Michael Cokes were passengers.

8.      On July 1, 2016, at or around 11:00 a.m., defendant Ewing chose to ram the Ford Explorer that he was driving into the driver's side of the vehicle in which Ronald Arrington, Isiah Stevenson and Michael Cokes were passengers, with great force at high speed, causing the vehicle in which Ronald Arrington, Isiah Stevenson and Michael Cokes were riding to roll over and crash at or near the intersection of 124th Street and Union Street, in Chicago, Illinois.

9.      At all times relevant hereto, at or near the intersection of 124th Street and Union Street in Chicago, Illinois, the speed limit in effect was 30 miles per hour.

**Exhibit A (Page 4 of 18)**

10.     At all times relevant hereto the City had ordinances and general orders that govern the operation of its vehicles by its employees.

11.     At all times relevant hereto all Defendants herein had a duty to refrain from conduct that consciously disregarded the safety of the general public, and especially Plaintiff's decedent Ronald Arrington.

12.     At all times relevant hereto Plaintiff did not act or fail to act in any fashion to cause Defendants to act or fail to act in a fashion that consciously disregarded of the safety of Plaintiff's decedent Ronald Arrington.

**COUNT I**
**WRONGFUL DEATH-WILLFUL AND WANTON CONDUCT**
**AGAINST CITY OF CHICAGO**

Plaintiff complains of the City as follows:

1-12.   Plaintiff restates and re-alleges paragraphs 1-12 of the General Allegations as and for paragraphs 1-12 of this Count I.

13.     At all times relevant hereto the City, acting by and through its duly authorized officers, agents, representatives and employees and especially Ewing herein, had a duty to refrain from willful and wanton conduct.

14.     Notwithstanding the City's aforementioned duty, the City by and through its officers, agents, representatives and employees, was guilty of one or more of the following willful and wanton acts or omissions:

(a) Began driving its vehicle at a high speed in a residential neighborhood in pursuit of the vehicle in which Plaintiff was riding, in the face of imminent danger and in gross disregard and indifference for the safety of others including Plaintiff's decedent Ronald Arrington;

3

**Exhibit A (Page 5 of 18)**

(b) Continued to drive its vehicle at high speed in a residential neighborhood in pursuit of the vehicle in which Plaintiff's decedent Ronald Arrington was riding, in the face of imminent danger and in gross disregard and indifference for the safety of others including Plaintiff's decedent Ronald Arrington;

(c) Drove its vehicle at such a high speed in a residential neighborhood that it could not stop before colliding into the vehicle in which Plaintiff's decedent Ronald Arrington was riding with great force and violence;

(d) Failed to stop its vehicle before colliding into the vehicle in which Plaintiff's decedent Ronald Arrington was riding;

(e) Drove its vehicle into and against the vehicle in which Plaintiff's decedent Ronald Arrington was riding with great force and violence in gross disregard and indifference for the safety of others including Plaintiff's decedent Ronald Arrington;

(f) Failed to properly monitor the ongoing conduct of its police officers prior to July 1, 2016;

(g) Failed to properly discipline the willful and wanton conduct of its police officers prior to July 1, 2016;

(h) Failed to instruct/order Ewing to not initiate the subject high speed pursuit complained of herein, in gross disregard and indifference for the safety of others including Plaintiff's decedent Ronald Arrington;

(i) Failed to instruct/order Ewing to discontinue the subject high speed pursuit complained of herein, in gross disregard and indifference for the safety of others including Plaintiff's decedent Ronald Arrington;

4

**Exhibit A (Page 6 of 18)**

(j) Failed to instruct/order Ewing to use alternative methods to try to apprehend the vehicle in which Plaintiff's decedent Ronald Arrington was riding, instead of pursuing it at high speed and ramming into it, in gross disregard and indifference for the safety of others including Plaintiff's decedent Ronald Arrington; and

(k) Was otherwise guilty of willful and wanton acts and omissions in gross disregard and indifference for the safety of others including Plaintiff's decedent Ronald Arrington.

15. As a direct and proximate result of one or more of the City's willful and wanton acts or omissions in gross disregard and indifference for the safety of others including Plaintiff's decedent Ronald Arrington, the City's vehicle(s) crashed into and against the vehicle in which Plaintiff's decedent Ronald Arrington rode, with great force and violence, causing it to roll over, hit a house and burst into flames, and causing two occupants to be killed including Plaintiff's decedent Ronald Arrington on July 1, 2016.

16. As a direct result of the death of plaintiff's decedent Ronald Arrington, his next of kin have suffered great losses of a personal and pecuniary nature including grief and sorrow and loss of companionship and society, subjecting defendant City of Chicago to liability pursuant to 740 ILCS 180/1, commonly referred to as the Wrongful Death Act.

WHEREFORE Plaintiff requests judgement in her favor and against the City in an amount of money in excess of the statutory amount of fifty thousand ($50,000) dollars, together with all taxable costs, expenses and interest.

### COUNT II – SURVIVAL ACT—WILLFUL AND WANTON NEGLIGENCE
(v. CITY OF CHICAGO)

1-15. Plaintiff re-alleges paragraphs 1-15 of this Complaint as if fully set forth herein.

**Exhibit A (Page 7 of 18)**

16.     As a further direct and proximate result of defendant City of Chicago's aforementioned willful and wanton acts or omissions, decedent Ronald Arrington suffered serious injuries of a personal and pecuniary nature, including but not limited to great pain and suffering prior to his death, subjecting defendant City of Chicago to liability pursuant to the Illinois Survival Act, 755 ILCS 5/27–6.

WHEREFORE, plaintiff asks for judgment against Defendant City of Chicago in excess of the minimum jurisdictional requirements for assignment of this case to the Law Division, plus costs.

### COUNT III
### WRONGFUL DEATH -WILLFUL AND WANTON CONDUCT
### AGAINST DEAN W. EWING

Plaintiff complains of Ewing as follows:

1-12.     Plaintiff restates and re-alleges paragraphs 1-12 of the General Allegations as and for paragraphs 1-12 of this Count III.

13.     At all times relevant hereto Ewing had a duty to refrain from willful and wanton conduct in the exercise and discharge of his duties as a Chicago Police Officer, and also in his individual capacity.

14.     Notwithstanding his aforementioned duty, Ewing was guilty of one or more of the following willful and wanton acts or omissions:

(a) Drove a City vehicle on a residential street in the City of Chicago at a high rate of speed well in excess of the prescribed speed limit;

(b) Drove a City vehicle on a residential street in the City of Chicago at a high rate of speed into an intersection without reducing speed before entering the intersection;

**Exhibit A (Page 8 of 18)**

    (c) Drove a City vehicle on a residential street in the City of Chicago at a high rate of

        speed and without activating its emergency lights or sirens;

    (d) Drove a City vehicle against and into the vehicle in which Plaintiffs were riding with

        deadly force and violence;

    (e) Failed to keep a proper lookout for the safety of Plaintiff's decedent Ronald

        Arrington and to avoid colliding with the vehicle in which Plaintiffs were riding;

    (f) Failed to sound proper warning for the safety of Plaintiff's decedent Ronald

        Arrington and others on the roadway;

    (g) Failed to reduce the speed of his vehicle and avoid colliding into the vehicle in which

        Plaintiffs were riding;

    (h) Failed to obey the restrictions and rules of the City before driving his vehicle at high

        speed in a residential neighborhood in the City of Chicago;

    (i) Failed to obey the instructions and rules of the City by continuing to drive his vehicle

        at high speed in a residential neighborhood in the City of Chicago; and

    (j) Was otherwise guilty of willful and wanton acts and omissions in gross disregard and

        indifference for the safety of others including Plaintiffs.

    15.    As a direct and proximate result of one or more of Ewing's willful and wanton

acts or omissions, in gross disregard and indifference for the safety of others, including Plaintiff,

Ewing crashed his vehicle with deadly force and violence into the vehicle in which Plaintiff's

decedent Ronald Arrington was riding, causing Ronald Arrington to suffer physical and

emotional injuries and death on July 1, 2016.

    16.    As a direct result of the death of plaintiff's decedent Ronald Arrington, his next

of kin have suffered great losses of a personal and pecuniary nature including grief and sorrow

**Exhibit A (Page 9 of 18)**

and loss of companionship and society, subjecting defendant Chicago Police officer DEAN W.

EWING to liability pursuant to 740 ILCS 180/1, commonly referred to as the Wrongful Death

Act.

WHEREFORE Plaintiff requests judgement in her favor and against Ewing in an amount

of money in excess of the statutory amount of fifty thousand ($50,000) dollars, together with all

taxable costs, expenses and interest.

## COUNT IV – SURVIVAL ACT—WILLFUL AND WANTON NEGLIGENCE
### (v. DEAN W. EWING)

1-15.   Plaintiff re-alleges paragraphs 1-22 of Count III of this Complaint as if fully set

forth herein.

16.      As a further direct and proximate result of defendant Dean W. Ewing's

aforementioned willful and wanton acts or omissions, decedent Ronald Arrington suffered

serious injuries of a personal and pecuniary nature, including but not limited to great pain and

suffering prior to his death, subjecting defendant Dean W. Ewing to liability pursuant to the

Illinois Survival Act, 755 ILCS 5/27–6.

WHEREFORE, plaintiff asks for judgment against Defendant Dean W. Ewing in excess of

the minimum jurisdictional requirements for assignment of this case to the Law Division, plus

costs.

## COUNT V—EXCESSIVE FORCE (Section 1983)
### AGAINST DEAN W. E EWING

Plaintiff complains of Ewing and as follows:

1-12.   Plaintiff hereby incorporates all previous paragraphs as though fully set forth

herein as paragraphs 1-12 of this Count V.

8

**Exhibit A (Page 10 of 18)**

23.     The actions of Ewing as set forth herein constitute excessive force against

Plaintiff's decedent Ronald Arrington thus violating their rights under the United States

Constitution and 42 U.S.C. Section 1983.

24.     As a direct and proximate result of Ewing's conduct, Plaintiff's decedent Ronald

Arrington suffered damages, including without limitation violations of his constitutional rights

and injuries both physical and emotional in nature and death.

WHEREFORE Plaintiff prays for judgement against Ewing for an award of reasonable

compensatory and punitive damages, plus attorney's fees and costs, all in excess of the statutory

amount of fifty thousand ($50,000) dollars.

## COUNT VI—WRONFUL DEATH - CIVIL BATTERY AGAINST DEAN W. EWING

Plaintiff complains of Ewing as follows:

1-12.   Plaintiff hereby incorporates all previous paragraphs as though fully set forth

herein as paragraphs 1-22 of this Count VI.

13.     The conduct of Ewing resulted inoffensive physical contact with the Plaintiff's

decedent Ronald Arrington made without his consent, thus constituting battery under Illinois

law.

14.     Ewing's actions proximately caused Plaintiff's decedent Ronald Arrington to

suffer injuries, including without limitation great bodily harm and emotional trauma, as well as

physical pain and suffering and death.

15.     As a direct result of the death of plaintiff's decedent Ronald Arrington, his next of

kin have suffered great losses of a personal and pecuniary nature including grief and sorrow and

loss of companionship and society, subjecting defendants DEAN W. EWING to liability

pursuant to 740 ILCS 180/1, commonly referred to as the Wrongful Death Act.

**Exhibit A (Page 11 of 18)**

WHEREFORE Plaintiff prays for judgement against Ewing for an award of reasonable compensatory and punitive damages, plus attorney's fees and costs, all in excess of the statutory amount of fifty thousand ($50,000) dollars.

## COUNT VII – SURVIVAL ACT—BATTERY
### (v. DEAN W. EWING)

1-14.    Plaintiff re-alleges paragraphs 1-14 of Count XIV of this Complaint as if fully set forth herein.

15.    As a further direct and proximate result of defendant Dean W. Ewing's aforementioned willful and wanton acts or omissions, decedent Ronald Arrington suffered serious injuries of a personal and pecuniary nature, including but not limited to great pain and suffering prior to his death, subjecting defendant Dean W. Ewing to liability pursuant to the Illinois Survival Act, 755 ILCS 5/27–6.

WHEREFORE, plaintiff asks for judgment against Defendant Dean W. Ewing in excess of the minimum jurisdictional requirements for assignment of this case to the Law Division, plus costs.

## COUNT VIII—MONELL CLAIM AGAINST THE CITY, TINLEY AND THE ISP

Plaintiff complains of the City as follows:

1-12.    Plaintiff hereby incorporate all previous paragraphs as though fully set forth herein as paragraphs 1-12 of this Count VIII.

13.    At all times relevant, Plaintiffs enjoyed and possessed a right under the Fourth Amendment to the Constitution to be free from the use of unreasonable force by police,

**Exhibit A (Page 12 of 18)**

including Ewing,.

14.     Plaintiffs' injuries and damages herein were proximately caused by policies and practices on the part of the City, which fall under the authority of the City.

15.     In July 2016, and for a period of time prior thereto, the City had notice of a widespread practice by their employees under which citizens, such as Plaintiff, were routinely subjected to the use of excessive force.

16.     The City's excessive use of force and willful violation of its pursuit policies is enabled by the code of silence.

17.     The City has also engaged in a widespread practice of their respective employees testifying dishonestly, making false reports, hiding and destroying evidence, failing to require official reports of official police activities, and/or failing to require complete and honest reports of police activities.

18.     These practices are directly encouraged at every level of law enforcement, from the Corporation Counsel's Office, to IPRA, to IAD, to the Cook County State's Attorneys' Office, and infect the City's relationship with its police, including but not limited to the employment contract with the Fraternal Order of Police.

19.     The failure to require police reports that are complete and honest encourages officers not to report the misconduct of other officers and creates a culture that enables misconduct.

20.     On information and belief, Ewing and other City employees have reported that the gold sedan in which Plaintiffs were riding as passengers struck his vehicle. This report is false. Chicago police officers have a widespread practice of falsely reporting specific lies that work to cast doubt over mistakes in their police work.  Similarly, officers engaged in pursuits tell

**Exhibit A (Page 13 of 18)**

lies that either they were not pursuing or they terminated the pursuit prior to the fatal accident.

      21.     Furthermore, the City fails to adequately investigate and discipline officers who have conducted wrongful reckless pursuits and shootings. Likewise, the City fails to discipline their employees when they commit perjury and create false reports.

      22.     The City has a widespread practice of failing to adequately document claims by officers about vehicle pursuits and/or police involved shootings, to wit:

(a) On information and belief, Officer John Fitzgerald shot Aaron Harrison in 2007 after garnering 25 misconduct complaints between 2001 and 2006. Fitzgerald was awarded the Superintendent's Award of Valor in 2010 for the incident. IPRA ruled the shooting justified, based largely on Fitzgerald's account that Harrison was attempting to shoot him while running away and a gun recovered on the scene. However, multiple witnesses asserted Harrison was unarmed. In 2013, a jury awarded the family a verdict of $8.5 million at trial and the City settled the civil suit after appeal for $9.3 million.

(b) On information and belief, in 2005, Officer Rick Caballero shot and killed Ben Romaine, who was driving away from Caballero. Despite a court order ordering that Romaine's vehicle be preserved for evidence, the Chicago Police Department destroyed the vehicle. The City also altered dispatch evidence. In his original conversation with the radio dispatcher, Caballero's dialogue was noted in an initial transcript as "He just, he just uh, he just ran so I took a shot at him." Later, after a deposition in which Caballero allegedly claimed his words were "he just rammed us," not "he just ran," an investigator for the Office of Professional Standards changed the record of the dispatch call to "he just, he just uh, he just [unintelligible] so I took a shot at him." Caballero was later awarded the Superintendent Award for Valor for the

12

**Exhibit A (Page 14 of 18)**

incident. The City settled the civil suit brought by the family.

(c) On information and belief, in 2009, Officer Darren Wright shot Corey Harris in the back and killed him. The City settled the civil suit for $1.2 million.

(d) On information and belief, Officer Michael St. Clair shot William Hope multiple times in the chest in broad daylight while Hope was in his car. In 2012, a federal jury found against the officers and awarded the family $4.6 million.

(e) On information and belief, in 2015, after officers shot Laquan McDonald sixteen times and killed him, the City settled the case for $5 million without any lawsuit being filed. Nine of the shots hit McDonald in the back. Chicago police officers went in a Burger King restaurant located fewer than 100 yards from where 17-year old Laquan McDonald was shot and killed and 86 minutes of surveillance footage (encompassing the time McDonald was shot and killed) were deleted, according to the restaurant's manager and McDonald's attorney.

(f) On information and belief, in 2013, after officers pursued a 17 year old driver at high speeds and ran him into pedestrians in a residential neighborhood, officers claimed they had discontinued the chase and arrived at the accident scene in the aftermath. Witnesses at the scene testified that police never discontinued the chase and the city settled that lawsuit for $1.375 million.

23.     On information and belief, former IPRA investigator Lorenzo Davis was terminated from his employment in 2015 because he determined that several police shootings were unjustified and refused to change the conclusions in his reports. Davis' team of investigators for IPRA found as many as six incidents where the officer was not justified in shooting the civilian victim. Davis' supervisor at IPRA directed him to change his findings and

13

**Exhibit A (Page 15 of 18)**

determine that each shooting was justified. Davis was told that if he did not change his findings, he was insubordinate and would face discipline.

24.     CPD detectives assigned to investigate police shootings provide FOP representatives access to and information about police involved shootings. That access and information is passed, often under dubious notions of legal privilege, between lawyers and accused CPD officers. In this manner, CPD officers can craft false narratives about police shootings that do not conflict.

25.     In furtherance of this practice, CPD and IPRA permit witness and accused officers to be represented by the same counsel and FOP representatives during official statements, who take breaks from being on the record to set their clients' stories straight.

26.     In the same vein, officers who use deadly force and take the life of a citizen are not required to draft a contemporaneous narrative of what occurred that justified the shooting or otherwise give a recorded and on-the-record statement about what occurred. The City does not require officers who take the lives of citizens to make narrative reports about the occurrence until after the officer, through his representatives (legal counsel and/or the Fraternal Order of Police) have an opportunity to review all reasonably available evidence so that the police can tell stories that do not conflict with themselves or the evidence.

27.     Rather than discipline misconduct and require reporting, the City circles the wagons. This widespread practice is allowed to flourish because the City directly encourages, and is thereby the moving force behind, the very type of misconduct at issue by failing to adequately train, supervise, and control officers, and by failing to adequately investigate, punish and discipline prior instances of similar misconduct, thus directly encouraging future abuses such as those affecting Plaintiffs.

14

**Exhibit A (Page 16 of 18)**

28.     In this way, the City violated Plaintiff's rights by maintaining policies and

practices that were the moving force for the foregoing constitutional violations.

29.     The above-described widespread practices, so well-settled as to constitute de

facto policy in the City, and were able to exist and thrive because governmental policymakers

with authority over the same, exhibited deliberate indifference to the problem, thereby

effectively ratifying it.

30.     Plaintiff's injuries were proximately caused by employees of the City, including

but not limited to Ewing, who acted pursuant to City policy and practices in engaging in the

misconduct described in this Count, .

WHEREFORE, pursuant to *Monell v. N.Y. Dep't of Soc. Servs.,* 436 U.S. 658 (1978),

Plaintiff demands judgment against the City for an award of reasonable compensatory damages,

plus attorney's fees and costs and any other relief this Court deems just, all in excess of the

statutory amount.

**COUNT IX—INDEMNIFICATION**

Plaintiff complains of the City as follows:

1-30.     Plaintiff hereby incorporates all previous paragraphs as though fully set forth

herein, as paragraphs 1-30 of this Count X.

31.     At all relevant times, the City was the employers of Ewing.

32.     Ewing committed the acts alleged above under the color of law and in the scope

of their employment as employees of the City.

33.     In Illinois, public entities are directed to pay for any tort judgment for

compensatory damages for which employees are liable within the scope of their employment

activities.

**Exhibit A (Page 17 of 18)**

34.     As a proximate result of the unlawful acts of Ewing, which occurred within the

scope of their respective employment, Plaintiff's decedent Ronald Arrington was injured and

died.

WHEREFORE, should Ewing be found liable on one or more of the claims set forth

above, Plaintiff demands that the City, Tinley and/or the ISP be found liable for any

compensatory judgment Plaintiff obtains against said individual defendant(s), plus attorney's

fees and costs awarded and such other and additional relief that this Court deems equitable and

just.

## COUNT X—*RESPONDEAT SUPERIOR*

Plaintiff complains of the City as follows:

1-34.   Plaintiff hereby incorporates all previous paragraphs as though fully set forth

herein, as paragraphs 1-34 of this Count X.

35.     In committing the acts alleged in the preceding paragraphs, Ewing was an agent

of the City and was acting at all relevant times within the scope of his employment and under

color of law.

36.     The City is liable as principals for all torts committed by their agents.

WHEREFORE, should Ewing be found liable on one or more of the stated claims set

forth above, Plaintiff demands that, pursuant to *respondeat superior*, the City be found liable for

any compensatory judgment Plaintiff obtains against said individual defendant(s), as well as

costs awarded, all in excess of the statutory amount of fifty thousand ($50,000) dollars.

Respectfully submitted,

MONTGOMERY LAW FIRM, LLC.

16

**Exhibit A (Page 18 of 18)**



By: _____
One of Plaintiff's Attorneys

James D. Montgomery, Jr.
Montgomery Law Firm, LLC.
221 N..LaSalle Street, Suite 1414
Chicago, IL 60601
(312) 880-1001
jdm@mfirmlaw.com

Cook County Atty. No. 59474

17