UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUANITA ARRINGTON, as Independent Administrator of the Estate of Ronald Arrington, deceased,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO; OFFICER DEAN W. EWING,<br><br>Defendants. | No. 17 C 5345<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Juanita Arrington ("Plaintiff") brings this action against the City of Chicago and Chicago Police Officer Dean Ewing in connection with the death of Ronald Arrington ("Arrington"). Among other claims, Plaintiff alleges that Officer Ewing used excessive force to apprehend Arrington during a high speed car chase, when Officer Ewing crashed his police vehicle into the car in which Arrington was a passenger. Plaintiff also alleges that the City is liable for Arrington's death under a *Monell* theory. The City has moved to dismiss the *Monell* claim. R. 15. For the following reasons, that motion is denied.

**Legal Standard**

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim

showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

**Background**

On July 1, 2016, Arrington and two others were passengers in a car driven by a person suspected of robbery. R. 1-1 at 2 (¶ 5). Illinois State Police officers began following the car, and a chase ensued. *Id.* (¶ 7). Apparently in an attempt to assist in apprehending the driver suspected of robbery, Officer Ewing joined the chase in his vehicle. Officer Ewing eventually rammed his vehicle into the driver's side of the car in which Arrington was a passenger, causing it to roll over and crash. *Id.* (¶ 8). Arrington died as a result. *Id.* at 5 (¶ 15).

Plaintiff claims that Officer Ewing's actions constitute excessive force. *Id.* at 8-9. Plaintiff also alleges that the City caused Arrington's death through a practice of tolerating and covering up the use of excessive force by its police officers. *Id.* at 10-15. Specifically, Plaintiff alleges that the City had notice of the "routine" use of excessive force by Chicago police officers. *Id.* at 11 (¶ 15). In support of this allegation, Plaintiff cites six instances of excessive force verdicts and settlements (including five shootings and one high speed chase). *Id.* at 12-13 (¶ 22).

Plaintiff alleges that the City enables this custom of excessive force in the police department through a "code of silence" involving "a widespread practice of [City law enforcement] employees testifying dishonestly, making false reports, hiding and destroying evidence, failing to require official reports of official police activities, and/or failing to require complete and honest reports." *Id.* at 11 (¶¶ 16-17). Plaintiff alleges that such conduct occurred in Arrington's case when "[Officer] Ewing and other City employees [falsely] reported that the [car] in which [Arrington was] riding . . . struck [Officer Ewing's] vehicle." *Id.* at 11 (¶ 20). Plaintiff also alleges that the City has failed to honestly and properly investigate or document three of the six instances of excessive force identified in the complaint. *Id.* at 12-13 (¶ 22). Further, according to Plaintiff, an investigator with the City's Independent Police Review Authority, Lorenzo Davis, was fired in 2015 "because he determined that several police shootings were unjustified and refused to change the conclusions in his reports" when directed to do so by his supervisor. *Id.* at 13-14 (¶ 23).

3

More specifically, Plaintiff alleges that the City's procedures for investigating claims of excessive force enable police officers to elude discipline or punishment by giving them the opportunity to conform their account of alleged excessive force incidents to the evidence discovered by investigators. Plaintiff makes the following allegations in this regard: "CPD detectives assigned to investigate police shootings provide [Fraternal Order of Police] representatives access to and information about police involved shootings. . . . [which] is passed . . . between lawyers and accused CPD officers. . . . [allowing officers to] craft false narratives about police shootings that do not conflict," *id.* at 14 (¶ 24); "CPD and IPRA permit witness and accused officers to be represented by the same counsel and FOP representatives during official statements, who take breaks from being on the record to set their clients' stories straight," *id.* (¶ 25); and "officers who use deadly force . . . are not required to draft a contemporaneous narrative of what occurred . . . . until after the officer (through his representatives) . . . [has] the opportunity to review all reasonably available evidence so that the police can tell stories that do not conflict with themselves or the evidence," *id.* (¶ 26).

## Analysis

I.  **Applicable Law**

"The usual way in which an unconstitutional policy is inferred, in the absence of direct evidence, is by showing a series of bad acts and inviting the court to infer from them that the policymaking level of government was bound to have noticed what was going on and by failing to do anything must have encouraged or at least

4

condoned, thus in either event adopting, the misconduct of subordinate officers." *Jackson v. Marion County*, 66 F.3d 151, 152 (7th Cir. 1995). "When this method of proof is used, proof of a single act of misconduct will not suffice; for it is the series that lays the premise of the system of inference." *Id.*; *see also Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) ("the plaintiff must demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents," by "provid[ing] examples of [other individuals in the defendant's position of municipal authority] taking actions similar to those complained of," or "plausibly alleg[ing] that such examples exist"); *Thomas v. Cook County Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2010) ("[T]here is no clear consensus as to how frequently [certain] conduct must occur to impose *Monell* liability [under the custom and practice theory], except that it must be more than one instance, or even three."). Applying this method of proof to an excessive force claim, the Seventh Circuit has held that a plaintiff must "establish[] that the City's policymakers knew that the police were using objectively unreasonable force in apprehending suspects"—by demonstrating that "excessive force is common" in the relevant jurisdiction—yet the policymakers "did nothing to solve the problem." *Dye v. Wargo*, 253 F.3d 296, 299 (7th Cir. 2001).

However, a municipal entity also can be liable for constitutional injuries without reference to a series of bad acts if it can be shown that the injury is a "highly predictable consequence" of a municipal custom or practice. *See Bd. of Cty. Com'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 409 (1997) (also described as a "plainly

5

obvious consequence"). Furthermore, the "high degree of predictability may also support an inference of causation—that the municipality's [custom or practice] led directly to the very consequence that was so predictable." *Id.* at 409-10. The Seventh Circuit recently applied this logic to hold that a "standard printed form" for obtaining warrants created by the Chicago Police Department, which invited officers to obtain warrants without constitutionally sufficient evidence, was a sufficient basis to plausibly allege municipal liability under *Monell*. *See White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016). In accordance with Supreme Court precedent eschewing the need to allege a series of bad acts in such circumstances, the court held that the plaintiff in that case "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process." *Id.*

At bottom, both methods of pleading *Monell* claims—the series of bad acts, and the highly predictable consequence—require allegations permitting a plausible inference that the municipal entity had notice that its employees were engaging in a custom or practice of unconstitutional behavior. The municipal entity's liability then flows from its failure to take action to prevent that custom or practice from injuring the plaintiff.

In this case, Plaintiff appears to attempt to allege liability under both the "series of bad acts" and the "highly predictable consequence" theories of *Monell* liability. The Court addresses each in turn.

6

## II. Series of Bad Acts

In an attempt to plausibly allege a series of bad acts, the Plaintiff cites six examples of excessive force verdicts or settlements concerning actions of Chicago police officers in addition to Arrington's case. But Chicago is a City of more than 2.7 million people[1] that employs approximately 12,000 police officers.[2] Moreover, the seven examples Plaintiff cites took place over a 13 year period. The Court questions whether these allegations alone are sufficient to plausibly infer that excessive force is so common among Chicago's police force that the City should have been on notice of such a custom or practice.[3]

Nevertheless, as is widely known in the Chicago legal community, the Department of Justice completed a report dated January 13, 2017 finding that the Chicago Police Department "engages in a pattern or practice of unconstitutional use of force." *See* DOJ Report at 22. This finding was based on a review of Chicago Police Department and IPRA records concerning incidents between January 2011

---

[1] *See* U.S. Census Bureau, American FactFinder website, https://factfinder.census.gov/faces/nav/jsf/pages/index.xhtml# (last visited Jan. 29, 2018).

[2] *See* U.S. Department of Justice, Investigation of the Chicago Police Department (Jan. 13, 2017), at 17, available at https://www.justice.gov/opa/file/925846/download (last visited Jan. 29, 2018) ("DOJ Report").

[3] The Court acknowledges that it held that a plaintiff had plausibly stated a *Monell* claim on fewer alleged examples of unconstitutional conduct in *Karney v. City of Naperville*, 2016 WL 6082354, at *10-13 (N.D. Ill. Oct. 18, 2016). But that case concerned the City of Naperville, which has a population of about 145,000, and a police department that employs 275 people, only a portion of whom are patrol officers. *See* City of Naperville Police Department website https://www.naperville.il.us/services/naperville-police-department/about-the-police-department/ (last visited Jan. 29, 2018). The Court finds this comparatively lower population of citizens and number of officers significant.

and April 2016. *See* DOJ Report at 22-25. Although the Justice Department's *conclusion* was not available to the City until January 2017, the *evidence* on which the report is based was readily available to City policymakers in the period of time preceding the incident causing Arrington's death. This evidence is more than sufficient to plausibly infer that the City has a custom or practice of tolerating or enabling the use of excessive force by its police officers, and that the City was on notice of this custom or practice during the relevant time period prior to Arrington's death.

Plaintiff did not cite the DOJ Report in her complaint. But the Seventh Circuit has held that government reports such as the DOJ Report at issue here can be admissible evidence of municipal notice relevant to a *Monell* claim. *See Daniel v. Cook County*, 833 F.3d 728, 740-42 (7th Cir. 2016) (citing cases); *see also Simmons v. City of Chicago*, 2017 WL 3704844, at *7-8 (N.D. Ill. Aug. 28, 2017) (finding the DOJ Report admissible at trial on a *Monell* claim against the City); *LaPorta v. City of Chicago*, 2017 WL 4340094, at *13 (N.D. Ill. Sept. 29, 2017) (finding a report by the City's Police Accountability Task Force a basis to deny summary judgment on a *Monell* claim alleging that a "code of silence" exists in the Chicago Police Department). Furthermore, the Seventh Circuit has held that it is proper for courts to take judicial notice of public records on a motion to dismiss pursuant to Rule 12(b)(6) without converting it to a motion for summary judgment. *See Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ("Despite the express language of [Rule] 12(b), we recently held that '[t]he district court may also take judicial

8

notice of matters of public record' without converting a 12(b)(6) motion into a motion for summary judgment." (citing cases)); *Tuduj v. Sanofi-Aventis U.S. LLC*, 2018 WL 286765, at *1 (7th Cir. Jan. 4, 2018) ("We construe the complaint in the light most favorable to the plaintiff [ ], accepting as true all well-[pleaded] facts alleged, taking judicial notice of matters within the public record, and drawing all reasonable inferences in the plaintiff['s] favor."). And as this Court has said before with regard to *Monell* pleading, "the Court cannot bury its head in the sand to the fact that other incidents and/or complaints . . . in fact exist." *Klinger v. City of Chicago*, 2017 WL 3394722, at *4 (N.D. Ill. Aug. 8, 2017). In this case, where Plaintiff alleges that the City enables or condones a custom or practice of excessive force among its police officers, the DOJ Report citing evidence that such a custom or practice does in fact exist is a sufficient basis for Plaintiff's *Monell* claim to proceed.[4]

## III. Highly Predictable Consequence

Even if the DOJ Report did not exist or was insufficient to demonstrate a "series of bad acts" putting the City on notice, the Court finds that Plaintiff has plausibly alleged a custom or practice by the City of which excessive force is a highly predictable consequence. Plaintiff alleges that the City perpetuates the

---

[4] The Court acknowledges that Judge St. Eve recently rejected the DOJ Report as a basis to plausibly allege failure-to-train and failure-to-discipline *Monell* claims against the City. *See Carmona v. City of Chicago*, 2018 WL 306664, at *3 (N.D. Ill. Jan. 5, 2018). But in that case, the plaintiff alleged "that police officers illegally handcuffed and interrogated him in a hospital bed and arrested him without probable cause." *Id.* Judge St. Eve held that the plaintiff failed to show "how the deficiencies described in the [DOJ Report] relate to [his] claim." *Id.* No such disconnect is present here, where Plaintiff alleges a custom or practice of excessive force among Chicago police officers, and the DOJ Report found such a custom or practice.

9

custom of excessive force among its police officers by allowing internal investigatory procedures to provide accused officers an opportunity to conform their account of alleged excessive force incidents to the evidence discovered by investigators. This alleged customary opportunity for officers to get their stories straight plausibly assured Officer Ewing that he could use excessive force in his pursuit of Arrington and not worry about being meaningfully disciplined or punished. Another court in this district recently found that similar allegations were sufficient to plausibly demonstrate that the City's practices were the moving force behind the individual officer's actions in an excessive force case. *See Turner v. M.B. Fin. Bank*, 2017 WL 4390367, at *8-9 (N.D. Ill. Oct. 3, 2017).[5] This Court also finds plausible Plaintiff's

---

[5] In *Turner*, the court described the plaintiff's allegations against the City as follows:

> Plaintiffs allege that "[a]s a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that its failure to do so manifests deliberate indifference." *Id.* ¶ 44(a). They allege that Defendant "facilitates the very type of misconduct at issue here by failing to adequately investigate, punish and discipline prior instances of similar conduct, thereby leading Chicago Police Officers to believe their actions will not be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff." *Id.* ¶ 44(b). They contend that "officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiffs in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases." *Id.* ¶ 44(c). Moreover, Defendant is "aware of," "condone[s]," and "facilitate[s]" by ["]their inaction a 'code of silence' in the

10

allegation that by allowing investigatory procedures that permit an accused officer to cover up instances of excessive force, the City sends a message to officers that it condones overly aggressive and unconstitutional policing, thereby causing officers to use excessive force when they might not otherwise if they knew they would be held fully accountable for such actions.

In opposition, the City argues that Plaintiff's allegations are insufficient because she does not provide examples of the City's use of faulty investigatory procedures. In support of this argument, the City cites two cases in which courts in this district dismissed *Monell* claims for failure to allege a sufficient number of other instances of misconduct necessary to plausibly allege a custom or practice. *See Hill v. City of Chicago*, 2014 WL 1978407 (N.D. Ill. May 14, 2014); *Kowalski v. County of DuPage*, 2013 WL 4027049 (N.D. Ill. Aug. 7, 2013). The *Monell* claims in both of those cases, however, were premised on a theory that the police department failed to train its officers to use procedures in accordance with constitutional restrictions. The Supreme Court has held that failure to train claims require a

---

> Chicago Police Department." *Id.* ¶ 44(d). In particular, "officers routinely fail to report instances of police misconduct and lie to protect each other," are not disciplined for this behavior, and Defendant has "failed to act to remedy the patterns of abuse" despite its knowledge of these problems. *Id.* ¶ 44(e).

2017 WL 4390367, at *8. The court in *Turner* found these allegations plausibly stated a claim against the City for excessive force because "the City fails to adequately investigate and punish past instances of excessive force by police, which has the effect of condoning and encouraging excessive force by police in the future, such as the alleged excessive force that occurred here." *Id.* at *9. The court held that, "[a]lthough borderline, there are enough factual allegations in the . . . complaint to 'nudge' this claim 'across the line from conceivable to plausibly.'" *Id.*

11

certain number of instances of officer misconduct in order to plausibly allege a custom or practice. *See Connick v. Thompson*, 563 U.S. 51, 62 (2011). But Plaintiff's claim against the City is not for a failure to train (a stray allegation aside (*see* R. 1-1 at 14 (¶ 27))). Rather, Plaintiff's "highly predictable consequence" theory alleges that the City actively enables the use of excessive force by maintaining loopholes in its investigatory procedures that permit officers to conform their stories to the facts, and provides specific examples of what those loopholes are. As discussed, this is not the type of *Monell* claim that requires allegation of multiple examples. *See Stokes v. Ewing*, 2017 WL 2224882, at *4 (N.D. Ill. May 22, 2017) ("In this case, Stokes alleges the City's complicity not in failing to train, supervise, or prevent misconduct, but in establishing a widespread custom or implicit policy that licenses unconstitutional conduct. A 'series of bad acts' is not required to state such a claim."). Thus, the cases the City cites are inapposite.[6]

The City also argues that Plaintiff's claim of investigatory procedures that protect officers from excessive force claims is insufficient because it is based on "broad conclusory allegations about the investigative practices of the Chicago Police Department detectives and a former IPRA investigator." But a "conclusory" allegation is one that reaches a legal conclusion. As detailed above, Plaintiff does not merely allege that the City's investigatory procedures encourage excessive force. That allegation alone is conclusory. Plaintiff, however, goes on to make several

---

[6] The City also cites *Johnson v. Sheriff of Cook County*, 2015 WL 1942724 (N.D. Ill. Apr. 24, 2015), in which the Cook County Jail was alleged to have failed to provide prescription medication to inmates. This factual scenario has little relevance to this case.

12

factual allegations about specific customs and practices the City employs to investigate allegations of excessive force, and how those customs and practices permit police officers to protect themselves from discipline or punishment. *See* R. 1-1 at 14 (¶¶ 24-26). Contrary to the City's attempt to dismiss these allegations as "conclusory," they are allegations of fact, which is what is required under *Twombly* to make a claim plausible. Of course, the City may contend that these allegations are false. But that is not the question on a motion pursuant to Rule 12(b)(6).

The City also attacks Plaintiff's *Monell* claim by separately arguing that "Plaintiff does not sufficiently allege a widespread practice of false reporting," R. 15 at 7; that "Plaintiff failed to set forth a widespread practice of failure to adequately document claims," *id.* at 9; and that "Plaintiff failed to allege a widespread practice of failure to discipline officers when they commit perjury and false reports," *id.* at 11. This is another way of arguing that Plaintiff's allegations are conclusory. But as discussed, Plaintiff provides additional factual details about how the City conducts excessive force investigations. It is certainly plausible that the alleged opportunity for officers to be privy to the facts discovered by investigators would result in widespread false reporting and inadequate documentation. Furthermore, a failure to discipline is inherent in these allegations.

Lastly, the City argues that even if the police department has a custom of condoning excessive force and protecting officers accused of excessive force, it "strains plausibility" to allege that this policy was the moving force behind the crash at issue here. *See* R. 29 at 11. The City contends that Officer Ewing would not

13

"choose" to "ram" his vehicle into another vehicle at high speed, because it is "an act totally against self-preservation." R. 15 at 8. But it is not implausible for a police officer to engage in a high speed chase. Indeed, the Chicago police department has issued a general order to its officers regarding when it is permissible to engage in a high speed chase. *See* General Order G03-03-01.[7] The Court also does not find it implausible that in certain circumstances, an officer might use his vehicle to impede a fleeing suspect's vehicle, and such an action could plausibly be the basis for an excessive force claim. Although it is danger of a different kind, the Court is not convinced that using a police vehicle to impede the escape of a suspect's vehicle is necessarily any more dangerous than other circumstances police officers face in the course of their duties, at least such that it pushes Plaintiff's *Monell* causation allegations out of the realm of plausibility. To the extent the City condones or enables police officers to use excessive force, the fact that Officer Ewing is alleged to have used his vehicle to commit the act of excessive force—as opposed to his fist or gun—does not undermine the causation element of Plaintiff's *Monell* claim.

## Conclusion

For the foregoing reasons, the City's motion to dismiss, R. 15, is denied.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: January 30, 2018

---

[7] Available at http://directives.chicagopolice.org/directives/data/a7a57be2-1291920c-54712-9192-aecb02ef17e0c47d.pdf?hl=true (last visited Jan. 29, 2018).