UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUANITA ARRINGTON, as Independent Administrator of the Estate of Ronald Arrington, deceased, | |
| Plaintiff, | No. 17 C 5345 |
| v. | |
| CITY OF CHICAGO and OFFICER DEAN W. EWING, | |
| Defendants. | |
| ISIAH STEVENSON and MICHAEL COKES, | |
| Plaintiffs, | No. 17 C 4839 |
| v. | Judge Thomas M. Durkin |
| CITY OF CHICAGO; OFFICER DEAN W. EWING; VILLAGE OF TINLEY PARK; OFFICER S.J. TENCZA; OFFICER J.G. VEGA; OFFICER S.R. HEIM; OFFICER T.A. POULOS; OFFICER A.H. CAMPBELL; OFFICER D.M. WALKER; ILLINOIS STATE POLICE; LEO SCHMITZ, Director of the Illinois State Police; and STATE POLICE TROOPER BRIAN WALKER, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

In both of these cases, the defendant City of Chicago has moved to bifurcate and stay the *Monell* claims against it, while the excessive force claims against Chicago Police Officer Ewing proceed. *See* 17 C 4839, R. 101; 17 C 5345, R. 44.

These motions and this order do not directly affect the other claims at issue in case 17 C 4839.

Federal Rule of Civil Procedure 42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims." A "district court has considerable discretion to order the bifurcation of a trial." *Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). *See also Volkman v. Ryker*, 736 F.3d 1084, 1089 (7th Cir. 2013) ("A district court's decision to bifurcate or to hold separate trials is reviewable for an abuse of discretion.").

The Seventh Circuit has noted that it is "sensible" for a district court to bifurcate and stay a *Monell* claim when the facts of the case are such that the municipality cannot be liable absent liability of the individual state actor. *See Swanigan v. City of Chicago*, 775 F.3d 953, 962 (7th Cir. 2015). That is true of the excessive force claim in this case. As the Court held in denying the City's motion to dismiss in the *Arrington* case, "Plaintiff has plausibly alleged a custom or practice by the City of which excessive force is a highly predictable consequence." 17 C 5345, R. 33 at 9 (*Arrington v. City of Chicago*, 2018 WL 620036, at *4 (N.D. Ill. Jan. 30, 2018)). For the City to be liable on this theory, Officer Ewing must have actually committed an act of excessive force, otherwise the City's alleged custom of condoning excessive force cannot possibly have caused the injuries in this case. For this reason, "*Monell* claims are most often bifurcated in this district when a case is rooted in allegations of excessive force." *Andersen v. City of Chicago*, 2016 WL

7240765, at *3 (N.D. Ill. Dec. 14, 2016) (citing *Horton v. City of Chicago*, 2016 WL 316878, at *2 (N.D. Ill. Jan. 26, 2016); *Carr v. City of North Chicago*, 908 F. Supp. 2d 926, 934 (N.D. Ill. 2012)). Plaintiffs have not articulated an alternative theory according to which a custom or practice of the City forced or tied Officer Ewing's hands, such that the City could be liable even if Officer Ewing isn't. *See* 17 C 5345, R. 58 at 3; 17 C 4839, R. 120 at 3.

Furthermore, in both cases, the City has agreed to consent to an entry of judgment against it should Officer Ewing be found to have acted with excessive force, even if the Court finds that Officer Ewing is entitled to qualified immunity. *See* 17 C 5345, R. 44-1; 17 C 4839, R. 101-1. Since the City cannot be liable without an underlying act of excessive force by Officer Ewing, the consent agreement that liability for the City will follow a finding that Officer Ewing's actions violated the Constitution makes discovery and trial of the *Monell* claim unnecessary.

Even if the City had not consented to such an agreement, judicial economy weighs in favor of bifurcation. It is clear that the *Monell* claims require significant discovery that is not relevant to the claims against Officer Ewing. Plaintiffs' contention that the City can "find" the documents requested with "only keystrokes," *see* 17 C 5345, R. 58 at 4; 17 C 4839, R. 120 at 3, even if true, ignores the work required to process and review the resulting thousands of pages before the documents are produced. Plaintiffs' claims of a custom or practice of excessive force among police in a city the size of Chicago likely implicates hundreds if not thousands of allegations even in a single year.

3

Moreover, Plaintiffs' dismissal as "pure speculation," 17 C 5345, R. 58 at 4; 17 C 4839, R. 120 at 3-4, of the City's contention that a number of "current and former high-ranking personnel of the Chicago Police Department" will be deposed, 17 C 5345, R. 44 at 6, is not well taken. The testimony of supervisory personnel is often key to proving or disproving an allegation of a custom or practice *Monell* claim. That is especially true here where Plaintiffs allege that police supervisors failed to seriously punish excessive force such that officers believed that supervisors condoned its use.

It is also quite likely that much of the evidence relevant to the *Monell* claims against the City would be inadmissible against Officer Ewing. Plaintiff argues that the *Monell* evidence would not prejudice Officer Ewing because it serves to show that Officer Ewing was following the crowd, which might make it less likely that a jury would hold Officer Ewing accountable for his actions. *See* 17 C 5345, R. 58 at 4; 17 C 4839, R. 120 at 4. The Court questions the validity of Plaintiffs' analysis of potential prejudice. But, to the extent Plaintiffs' reasoning is sound, it would be impermissible for the jury to exonerate Officer Ewing merely because he was acting in accordance with a custom or practice. The jury would still have to determine whether *his* conduct constituted excessive force. Thus, to the extent Plaintiffs' prediction as to how the jury would receive the *Monell* evidence is accurate, the jury should not be given the opportunity to engage in such reasoning.

Plaintiffs also argue that bifurcation and the City's consent to judgment based on Officer Ewing's actions will prevent them from achieving the "non-

4

monetary benefits" of "succeeding on the *Monell* claim" such as "the potential for policy change and deterrence." 17 C 5345, R. 58 at 4-5; 17 C 4839, R. 120 at 4. But Plaintiffs do not seek injunctive relief in this case. *See* 17 C 5345, R. 1-1; 17 C 4839, R. 109. The City's consent to judgments on excessive force cases and the attendant costs is the extent of the deterrent effect that is available to Plaintiffs in this case. Plaintiffs likely hope to learn more about the City's customs and practices with respect to use of force through discovery on the *Monell* claims. But as discussed, the circumstances of the cases make such discovery unnecessary.

## Conclusion

For the foregoing reasons, the City's motions to bifurcate and stay, 17 C 4839, R. 101; 17 C 5345, R. 44, are granted.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: August 14, 2018