UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUANITA ARRINGTON, as Independent Administrator of the Estate of RONALD ARRINGTON, deceased,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, an Illinois municipal corporation, et al.,<br><br>Defendants. | No. 17 C 5345<br><br>Judge Thomas M. Durkin |
| ISIAH STEVENSON and MICHAEL COKES,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CHICAGO, an Illinois municipal corporation, et al.,<br><br>Defendants. | No. 17 C 4839<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs filed two lawsuits asserting various federal and state law claims in connection with a police pursuit that ended in a vehicle collision. After a week-long trial, the jury returned a verdict for the defense. Plaintiffs now move for a new trial. R. 308 (Case No. 17 C 5345); R. 391 (Case No. 17 C 4839). For the following reasons, Plaintiffs' motions are denied.

1

## Background

This case arises out of a collision between a police vehicle driven by Chicago Police Department ("CPD") officer Dean Ewing and a Pontiac driven by Jimmie Malone, in which Ronald Arrington, Isiah Stevenson, and Michael Cokes were passengers. At the time of the crash, the Pontiac was being pursued by Illinois State Police ("ISP") officers in response to a reported robbery in Tinley Park, Illinois. Malone and Arrington were killed in the crash, and Stevenson, Cokes, Ewing, and the other officers in the police vehicle were injured.[1]

Juanita Arrington (on behalf of decedent Ronald Arrington), Stevenson, and Cokes brought two lawsuits asserting various federal and state law claims against the City of Chicago and Ewing (collectively, "Defendants"). Following a week-long trial, the jury returned a verdict in Ewing's favor on all counts.[2] Plaintiffs now move for a new trial, alleging that several evidentiary rulings were in error and resulted in unfair prejudice. *See* R. 308 (Case No. 17 C 5345); R. 391 (Case No. 17 C 4839).

## Legal Standard

A new trial may be granted only "where the verdict is against the clear weight of the evidence or the trial was not fair to the moving party." *Johnson v. Gen. Bd. of Pension & Health Benefits of the United Methodist Church*, 733 F.3d 722, 730 (7th

---

[1] A more thorough account of the factual background is included in the Court's prior summary judgment ruling. *See Arrington v. City of Chi.*, 2022 WL 2105871, at *1–2 (N.D. Ill. June 10, 2022) ("*Arrington I*").

[2] Counsel for the City of Chicago stipulated prior to trial that if there was a verdict against Ewing, he was acting within the scope of his authority as a CPD officer, and the City of Chicago would pay any resulting judgment. R. 308-1 ("Tr. Vol. 1") at 112:10–113:4.

Cir. 2013). Evidentiary errors warrant a new trial only "if the evidentiary errors had 'a substantial and injurious effect or influence on the determination of a jury and the result is inconsistent with substantial justice.'" *Burton v. E.I. du Pont de Nemours & Co., Inc.*, 994 F.3d 791, 812 (7th Cir. 2021) (quoting *Fields v. City of Chi.*, 981 F.3d 534, 544 (7th Cir. 2020)). "[E]ven if a judge's decision is found to be erroneous, it may be deemed harmless if the record indicates the trial result would have been the same." *Lewis v. City of Chicago Police Dep't*, 590 F.3d 427, 440 (7th Cir. 2009).

## Analysis

### I. Joint Enterprise

Plaintiffs first argue that the Court erred in allowing the joint enterprise defense. This argument is a familiar one. Plaintiffs challenged the application of the joint enterprise theory to an alleged criminal venture through motions for summary judgment, motions in limine, and a joint pretrial motion under Rule 50. The Court rejected that challenge each time.[3] *See Arrington I* at *11–12, 15; *Arrington v. City of Chi.*, 2022 WL 3357272, at *2–4 (N.D. Ill. Aug. 15, 2022) ("*Arrington II*"); Tr. Vol. 1 at 125:15–127:10, 164:13–165:5. Plaintiffs' motions for a new trial do nothing more than rehash the arguments they previously raised on this issue. Reiterating previously raised arguments does not justify reconsideration of this Court's prior

---

[3] Before trial, Plaintiffs moved both in limine and under Rule 50 to bar the joint enterprise defense. While the standards may differ, the Court denied both motions concurrently at the final pretrial conference based on the evidence proffered by the parties, and provided additional detail in writing as to the reasons for denying the Rule 50 motion without prejudice. *See Arrington II*.

3

rulings or establish that the Court erred in so ruling. *See Goldberg v. 401 North Wabash Venture*, No. 09 C 6455, 2013 WL 4506004, at *27 (N.D. Ill. Aug. 23, 2013).

In particular, Plaintiffs assert that the Court erred in allowing the joint enterprise defense because there was no evidence of a "right to control."[4] Though the Court's analysis perhaps could have been clearer, it was neither incomplete nor in error. As the Court discussed, Ronald Arrington himself drove the Pontiac through the parking lot where the robbery occurred and reoriented the car after Malone jumped out to rob the victim. *See Arrington II* at *4. Arrington continued driving the car until he switched with Malone, and Stevenson and Cokes moved seats, at some point before the collision. Plaintiffs had an opportunity to get out of the car during one of the several stops it made before the chase, including when the drivers switched, but did not do so. And at trial, both Stevenson and Cokes testified that they were not surprised that Arrington was driving because, in their view, people drive other people's cars all the time. R. 308-7 ("Tr. Vol. 6") at 245:14–21, 246:11–19; R. 308-8 ("Tr. Vol. 7") at 176:12–18. Viewing that evidence in the light most favorable to Defendants, there was "more than a mere scintilla of evidence" that Plaintiffs and Malone had an understanding between them that each had a right to share in the control of the Pontiac. *See Filipovich v. K & R Exp. Sys., Inc.*, 391 F.3d 859, 863 (7th

---

[4] Consistent with the jury instructions used at trial, a joint enterprise exists if four elements are present: (1) an agreement, express or implied, between the parties; (2) a common purpose to be carried out by the parties; (3) a mutual profit-seeking endeavor for that purpose between the parties; and (4) an understanding between them that each had a right to share in the control of the operation of the car. *See* R. 303 (Case No. 17 C 5345).

4

Cir. 2004) (citation omitted). Thus, there was sufficient evidence such that it was appropriate to permit the jury to decide this issue.

However, even if this Court erred in allowing the joint enterprise defense, the alleged error did not affect the jury's determination. To start, the jury did not find that a joint enterprise existed. The jury's responses to the special verdict form indicate that they did not accept Defendants' arguments on several of the elements of the joint enterprise defense: they did not find that Plaintiffs were part of a mutual profit-seeking endeavor or that they had an understanding between them that each had a right to control of the vehicle. *See* R. 323 (Case No. 17 C 5345); R. 406 (Case No. 17 C 4839).

Plaintiffs acknowledge the jury's findings, but maintain that the admission of evidence in support of this defense biased the jury against them. But evidence related to their conduct leading up to and during the robbery would have been admissible even without the joint enterprise defense, because it was relevant to the defense that Plaintiffs were themselves contributorily negligent. Specifically, Defendants could have pointed to that evidence to show that Plaintiffs willingly placed themselves in the hazardous situation despite having several opportunities to avoid that risk. *See Arrington II* at *4 n.4. Evidence that directly bears on this defense includes parking lot security footage that shows that the Pontiac behaved like a "getaway vehicle" while Ronald Arrington was at the wheel and Stevenson and Cokes were in the vehicle; that Malone, who had a reputation known by at least Stevenson as a getaway driver, was permitted to return to the vehicle following the robbery and subsequently

5

take over driving; and that Plaintiffs did not exit the vehicle when ordered by the ISP on the highway exit ramp, despite having approximately 20 seconds to do so, or before that point.[5]

Moreover, Plaintiffs offer no support beyond the unfavorable verdict for their claim that the jury reached its verdict to "castigate" them. Instead, the special verdict form responses strongly suggest that Plaintiffs simply failed to prove their claims. Accordingly, allowing the joint enterprise defense does not entitle Plaintiffs to a new trial.

## II.     Testimony regarding Illinois State Police Policy and Procedures

Plaintiffs also argue that the Court erred in overruling their objection to Illinois State Trooper Walker's testimony about ISP's policies and procedures because such testimony was irrelevant and misled the jury. In particular, Plaintiffs assert that Walker's testimony about not needing supervisor authorization to pursue a wanted vehicle confused the jury about whether Ewing needed such authorization. At trial, the Court permitted Walker to "talk about what he did and why he did it and who he called and who he didn't call and why he didn't call." Tr. Vol. 6 at 172:16–173:4. The Court added that if the rules Walker followed were different from those of CPD, Plaintiffs were free to bring out that difference and Walker's lack of knowledge of CPD policies on cross. *Id.* The Court further barred Walker from testifying as to

---

[5] To the extent that the Court referenced the prejudicial nature of the evidence related to the joint enterprise theory, those remarks preceded this Court's ruling on the Rule 50 motion, where the Court explained that the evidence may be separately relevant to the contributory negligence defense and proximate causation. *See Arrington II* at *4 n.4.

6

whether Ewing was engaged in a pursuit at the time of the incident. *Id.* at 168:4–169:12.

The Court's ruling was not in error, and Walker stayed well within its limits. Walker testified about what he did on the day of the collision and why he did it. To the extent that Walker referenced an ISP policy or procedure, it was to explain why he took or didn't take a given action in the lead up to the collision. At one point, he mentioned that he did not call his supervisor when he began pursuing the Pontiac because he did not need supervisory authorization to pursue a wanted vehicle. *Id.* at 173:14–174:13. That testimony was relevant because it went directly to the circumstances of his involvement in the subsequent chase, and the Court did not err in admitting it.

Even if the Court did err, that testimony could not have misled the jury as to what pursuit rules applied to Ewing as a CPD officer. At no point did Walker suggest that CPD had the same policy on supervisor authorization.[6] Rather, when cross-examined by Juanita Arrington's counsel, Walker acknowledged that ISP and CPD policies, including those related to pursuit, may be different. *Id.* at 220:12–17. Plaintiffs also examined Ewing, other CPD officer witnesses, and Plaintiffs' expert

---

[6] In reply, Arrington claims that Walker "made statements about what he knew and never knew Chicago Police Department Officers to do and not do." R. 321 at 3 (Case No. 17 C 5345). Arrington does not include any citation to the record for such statements. The Court cannot readily discern from the description what statements Arrington is referring to, nor is it this Court's responsibility to search for them. *See Bunn v. FDIC*, 908 F.3d 290, 297 (7th Cir. 2018) ("As has become axiomatic in our Circuit, judges are not like pigs, hunting for truffles buried in the record.").

Andrew Scott about CPD policies and whether or not Ewing complied with them. *Fields*, 981 F.3d at 550 (affirming denial of motion for a new trial where defendants were able to introduce evidence to discredit witness statement that they asserted was erroneously admitted). And in fact, Ewing acknowledged that he needed supervisory approval to engage in a pursuit initiated by another law enforcement agency under CPD general orders. R. 308-6 ("Tr. Vol. 5") at 29:21–30:16. Thus, the Court did not err in permitting Walker to testify as to what he did and why, nor did that evidence pose a substantial risk of confusing the jury.[7]

## III.  References to COPA

Plaintiffs next claim that the Court erred in excluding the Civilian Office of Police Accountability ("COPA") report about the collision because the defense opened the door to its admission at trial. Following an investigation, COPA concluded, among other things, that Ewing violated certain CPD orders and Illinois law by operating his vehicle without due regard for the safety of others. Before trial, the Court excluded the COPA report but permitted questioning on statements made by Ewing and other witnesses to COPA for impeachment purposes. *See* R. 286 (Case No. 17 C 5345). The Court explained that the COPA report carried a substantial risk of unfair prejudice

---

[7] Defendants contend that Stevenson and Cokes waived the argument that the Court's admission of Illinois State Trooper Walker's testimony because while Arrington made a timely objection, they did not. However, the Court made clear at trial that "I'm assuming if one counsel has an objection, the other doesn't, you'll point it out. Otherwise, what either one of you say I assume applies to both." R. 308-3 ("Tr. Vol. 2") at 190:5–8. Accordingly, where Arrington objected, and Stevenson and Cokes did not raise their disagreement, the Court considers Stevenson and Cokes to have joined in that objection.

and confusion due to the close relationship between the findings and disputed issues before the jury and the fact that the investigation was not conducted under the same standards or evidentiary rules as applied in this case. *Id.* at 3–4. The Court further held that Plaintiffs would be allowed to use the COPA report if Ewing opened the door through his own testimony or testimony he elicited from others. *Id.* at 5.

Plaintiffs point to six instances at trial where they say the defense opened the door, and the Court erred in refusing to admit the COPA report in response. First, when asked on re-direct whether he considered the collision non-preventable, Ewing answered that the collision was "designated as a non-preventable accident." Tr. Vol. 5 at 79:21–23. The Court overruled Arrington's counsel's objection, explaining that the answer would be stricken and that "in a one-off . . . where the answer was not responsive to the question, I don't believe there was an intentional opening of the door." *Id.* at 80:8–81:16. The Court then advised the jury, "[T]he last answer by the witness is stricken, about the statistic on the unavoidable crashes. It's simply stricken." *Id.* at 81:20–22. Though Plaintiffs did not make any objection to that instruction at the time, they now argue that the Court's instruction did not address the part of Ewing's answer that implicated the COPA report. If Plaintiffs found the Court's curative action inadequate, whether because it was unclear, needed greater emphasis, or otherwise, Plaintiffs should have raised that issue contemporaneously. Plaintiffs did not do so until the present motion, and that undermines their argument of error. *See Christmas v. City of Chi.*, 682 F.3d 632, 640 (7th Cir. 2012) ("By failing

9

to object, Plaintiffs may not raise the issue for the first time in a motion for a new trial[.]").

Immediately following that colloquy, when asked what, factually speaking, made the collision unavoidable, Ewing relayed certain facts and then began, "so in the department's view." Tr. Vol. 5 at 82:1–6. The Court immediately interrupted Ewing and admonished him in front of the jury: "We're asking not for anybody's view other than yours. . . . Restrict it to your perspective and not any third party's perspective." *Id.* at 82:7–13. There was no specific reference to COPA, and with the Court's quick intervention, there was no testimony about the substance of any "view." Additionally, Plaintiffs' counsel did not move to strike his testimony or request a different curative action. Without an objection or motion to strike, Plaintiffs cannot establish an error that warrants a new trial. *See Christmas*, 682 F.3d at 640.

Third, when questioned by Juanita Arrington's counsel on redirect about whether Ewing was saying that he stopped at the intersection, Ewing stated, "No. I'm not saying that's not -- that's not why it was ruled non-avoidable." Tr. Vol. 5 at 100:14–16. Here again, the Court immediately interjected, "Sir, again, we're not -- the jury decides all those issues. So stay away from anything at all other than answering the questions . . . He asked your opinion of why it was unavoidable, not any other opinions. Ultimately, the jury has to decide that. So nobody else's decision, opinions, other than your own, is the subject of the question." *Id.* at 100:17–25. Again too, Plaintiffs' counsel did not move to strike any part of Ewing's testimony or request a curative instruction. *See Christmas*, 682 F.3d at 640.

10

Fourth, Ewing mentioned a "witness earlier" who had stated that his CPD vehicle lights were activated. Tr. Vol. 5 at 91:23–92:1. Plaintiffs claim that this was a reference to what Jesse Adams allegedly said in an interview with COPA. But Adams was not a witness at trial. The more likely explanation is that Ewing was referring to Aisha McIntyre who testified at trial several days before Ewing. McIntyre observed the collision, and was questioned in court about her previous statement to investigators that the police vehicle's lights were on. R. 308-4 ("Tr. Vol. 3") at 128–131, 136. In any case, on Juanita Arrington's motion, the Court promptly struck Ewing's answer and advised counsel on side bar to direct Ewing "to make sure he understands that he's not to mention other witnesses that might have been involved in the COPA investigation." *Id.* at 92:2–94:8.

Fifth, and relatedly, when defense counsel asked Plaintiffs' expert Andrew Scott whether there was "something [he] read about a witness seeing lights on," Scott answered, "Yes, I think Mr. Adams may have seen the lights." Tr. Vol. 5 at 219:3–5. Plaintiffs did not contemporaneously object to or move to strike the question or the answer. When Plaintiffs raised the issue of the reference to Adams the next day, the Court explained how "[t]he reference to people who gave information as part of COPA or part of a deposition or part of any other independent investigation doesn't open the door to what the findings of the investigatory body were," and that "letting COPA's finding in will usurp the role of the jury in this case and lead to confusion." Tr. Vol. 6 at 3:4–9:4. Yet, in light of the reference, the Court advised the jury that Adams would

11

not be a witness and instructed them to disregard Scott's testimony about Adams potentially seeing flashing lights. *Id.* at 9:5–11:24, 13:21–14:4.

Sixth, and finally, when asked by defense counsel to generally summarize the materials he reviewed pertaining to the accident, defense expert Jeffrey Bauer mentioned "a COPA investigative file." Tr. Vol. 7 at 54:12–23. Directly following the reference, the Court initiated a side bar and admonished the witness not to use the term "COPA." *Id.* at 54:23–55:25. Here again, Plaintiffs did not move to strike or request a curative instruction.

The Court did not err in excluding the COPA report in the face of these references. When a party "opens the door," or in other words puts an issue into evidence, it must accept the opponent's "commensurate" response. *United States v. Jett*, 908 F.3d 252, 271 (7th Cir. 2018). The key word is "commensurate." When the responsive evidence "does not directly contradict the evidence previously received" or "goes beyond the necessity of removing prejudice in the interest of fairness," it should not be admitted. *Id*. The admission of the COPA report was not a commensurate response to any of the references identified by Plaintiffs, either individually or in the aggregate. The references were brief, particularly in the context of a week-long trial, and largely indirect and non-substantive and, as such, could not have substantially or injuriously affected the jury's determination. Importantly, none of the references appeared intentional. Admitting COPA's findings on the causes of the collision and Ewing's compliance with CPD orders and Illinois law would have gone far beyond removing any potential prejudice caused by those references by confusing the jury

12

and usurping their role as the finders of fact. *See Lewis*, 590 F.3d at 440 (rejecting argument that excluding evidence of EEOC determination and internal investigation was in error because "it could have confused the jury into thinking that the issue [they were asked to determine] was already decided"). The Court's immediate action in striking testimony, admonishing witnesses, and offering limiting instruction were sufficient to cure any minimal prejudice that flowed from the brief references. *See Christmas*, 682 F.3d at 641 (affirming denial of motion for new trial where district court timely offered a curative instruction in response to an isolated comment made in the course of a week-long trial). The exclusion of the COPA report does not justify a new trial.

## IV.   Illinois Dead Man's Act

Lastly, Juanita Arrington argues that the Court erred in holding that the Illinois Dead Man's Act did not apply, and allowing in purportedly prejudicial testimony about the events leading up to the collision that Ronald Arrington had no opportunity to rebut.[8] Again, Arrington merely rehashes her previous motion in limine on this issue, which the Court denied. *See Arrington II* at *1–2. Repeating previously raised and rejected arguments, without any new analysis or authority, does not establish error. *Goldberg*, 2013 WL 4506004, at *25 (refusing to grant a new trial where plaintiff rehashed arguments previously made in support of motions in limine).

---

[8] Stevenson and Cokes do not raise this argument in their motion for a new trial.

Even if this Court erred, Arrington has not established that the admission of evidence of conversations and events that occurred in his presence caused undue prejudice. Contrary to Juanita Arrington's contention that Stevenson and Cokes threw Ronald Arrington under the proverbial bus, their testimony was generally helpful to him. They testified that when Malone returned to the car following the robbery, Arrington asked him what had happened, argued with him, appeared upset, and subsequently refused to drive any further. *See* Tr. Vol. 6 at 266:14, 271:8–11; Tr. Vol. 7 at 34:17–25, 35:13-17, 35:24–25, 199:19–24, 200:11–201:19, 200:23–201:1, 203:6–19, 234:7–22. They also testified that Malone tried to get Arrington to hold the money, and Arrington refused. *See* Tr. Vol. 7 at 21:23–22:2, 23:6–10, 26:1-9, 212:12–21. Further, they testified that after Malone fled from the police, Arrington, along with Stevenson and Cokes, was upset and trying to get out of the car. *See id.* at 42:1–5, 44:22–45:7, 209:15–16, 229:14–21. Additionally, Cokes disputed Regina DeCarlo's testimony that the Pontiac drove in a suspicious manner around the parking lot before the robbery. *See id.* at 182:15–23. That testimony tends to undermine the joint enterprise defense as to Arrington, not support it. That the jury ultimately found that no joint enterprise existed only suggests that the trial result would have been the

same without the evidence. Accordingly, the Court's ruling on the Illinois Dead Man's Act does not justify a new trial.[9]

## Conclusion

For the foregoing reasons, the Court denies Plaintiffs' motions for a new trial.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: April 27, 2023

---

[9] Arrington also identifies the "restriction of Mr. Scott from testifying as to matters which were in the scope of his analysis" as an evidentiary error, but fails to offer any analysis of that issue. Similarly, Arrington briefly raises for the first time in her reply brief that the Court's denial of bifurcation caused jury confusion and bias as it related to statements made against Ronald Arrington's interest. *See* Tr. Vol. 1 at 4:2–5:21 (oral ruling denying bifurcation). Those perfunctory and undeveloped arguments are waived. *Crespo v. Colvin*, 824 F.3d 667, 673 (7th Cir. 2016)

15